No. 24-6146

# In the United States Court of Appeals for the Tenth Circuit

UNITED STATES OF AMERICA, PLAINTIFF-APPELLEE,

V.

JOHNATHAN JOHNSON, DEFENDANT-APPELLANT.

ON APPEAL FROM
THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

THE HONORABLE JODI W. DISHMAN
DISTRICT JUDGE

D.C. NO. 5:23-cr-180-JD-1

BRIEF OF PLAINTIFF-APPELLEE
ORAL ARGUMENT NOT REQUESTED

ROBERT J. TROESTER
United States Attorney

TANNER HERRMANN
Special Asisstant U.S. Attorney
210 Park Avenue, Suite 400
Oklahoma City, OK 73102
Telephone (405) 553-8700
Attorneys for Plaintiff-Appellee

# Table of Contents

**Page(s)**

Table of Authorities ................................................................. iii

Prior or Related Appeals ..................................................... viii

Statement of the Issues .......................................................... 1

Statement of the Case ............................................................ 1

Summary of the Argument .................................................... 16

Argument ................................................................................ 19

I. The district court committed no error under Rule 404(b)
by admitting evidence related to Mr. Johnson's prior
sexual acts ............................................................................ 19

  A. The Court should review this claim for plain error. ... 19

  B. The district court did not err in weighing the
   *Huddleston* factors. ...................................................... 22

    a. Proving knowledge is a proper purpose. ... 26

    b. Mr. Johnson's four prior instances of
     masturbating in front of prison staff
     within two years were relevant to the
     knowledge element of the offense. ............. 28

    c. The district court correctly balanced the
     Rule 403 considerations. ............................ 31

    d. The district court mitigated unfair
     prejudice with a proper limiting
     instruction. .................................................. 32

II.     The district court did not abuse its discretion in declining
        to exclude the prior bad acts evidence under Rule 403. ....... 34

III.    The district court properly admitted the BOP administrative
        disciplinary records under Rule 803(6) and did not plainly
        err in not sua sponte excluding them under Rule 803(8)(ii)
        or (iii). .................................................................... 40

IV.     The district court did not err in sentencing Mr. Johnson. .... 60

Conclusion .............................................................................. 63

Certificate of Compliance with Type-Volume Limitation, Typeface
Requirements, and Type Style Requirements ....................................... 64

# Table of Authorities

Page(s)

## Federal Cases

*Havelock v. United States,*
    427 F.2d 987 (10th Cir. 1970) .............................................................. 30

*Huddleston v. United States,*
    485 U.S. 681 (1988) ...................................................................... 3, 23

*Old Chief v. United States,*
    519 U.S. 172 (1997) ............................................... 25, 29, 30, 32, 48

*United State v. Murry,*
    31 F.4th 1274 (10th Cir. 2022) ........................................................ 38

*United States v. Archuleta,*
    737 F.3d 1287 (10th Cir. 2013) ...................................................... 34

*United States v. Blackburn,*
    992 F.2d 666 (7th Cir. 1993) ........................................................... 45

*United States v. Cain,*
    615 F.2d 380 (5th Cir. 1980) ........................................... 45, 49, 57, 60

*United States v. Cates,*
    73 F.4th 795 (10th Cir. 2023) ..................................................... 19, 20

*United States v. Cerno,*
    529 F.3d 926 (10th Cir. 2008) ..................................................... 36, 39

*United States v. Dowdell,*
    595 F.3d 50 (1st Cir. 2010) ........................................................ 48, 54

*United States v. Edelmann,*
    458 F.3d 791 (8th Cir. 2006) ........................................................... 49

*United States v. Gallegos,*
    111 F.4th 1068 (10th Cir. 2024) ...................................................... 36

*United States v. Goddard*,
  929 F.2d 546 (10th Cir. 1991) ............................................................ 61

*United States v. Grady*,
  544 F.2d 598 (2d Cir. 1976) ............................................................... 49

*United States v. Harper*,
  118 F.4th 1288 (10th Cir. 2024) ........................................................ 41

*United States v. Harris*,
  557 F.3d 938 (8th Cir. 2009) .............................................................. 55

*United States v. Harrison*,
  942 F.2d 751 (10th Cir. 1991) ............................................................ 27

*United States v. Hayes*,
  861 F.2d 1225 (10th Cir. 1988) ................................... 45, 46, 50, 52, 53

*United States v. Henthorn*,
  864 F.3d 1241 (10th Cir. 2017) .......................................................... 27

*United States v. Hernandez*,
  913 F.2d 1506 (10th Cir. 1990) .......................................................... 52

*United States v. Herrera*,
  51 F.4th 1226 (10th Cir. 2022) ............................................... 25, 26, 36

*United States v. Hoffman-Vaile*,
  568 F.3d 1335 (11th Cir. 2009) .......................................................... 55

*United States v. Irving*,
  665 F.3d 1184 (10th Cir. 2011) .......................................................... 55

*United States v. Keck*,
  643 F.3d 789 (10th 2011) ................................................................... 41

*United States v. King*,
  613 F.2d 670 (7th Cir. 1980) .............................................................. 54

*United States v. Lacy*,
  904 F.3d 889 (10th Cir. 2018) ...................................................... 32, 51

*United States v. Leffler*,
  942 F.3d 1192 (10th Cir. 2019) ........................................................... 41

*United States v. Leib*,
  57 F.4th 1122 (10th Cir. 2023) ........................................................... 21

*United States v. MacKay,*
  715 F.3d 807 (10th Cir. 2013) ............................................................ 36

*United States v. Martinez,*
  92 F.4th 1213 (10th Cir. 2024) .................................................... 25, 27

*United States v. Medrano,*
  356 F. App'x 102 (10th Cir. 2009) ................................................ 50, 52

*United States v. Merritt,*
  961 F.3d 1105 (10th Cir. 2020) .......................................................... 37

*United States v. Moran,*
  503 F.3d 1135 (10th Cir. 2007) ............................................................ 7

*United States v. Nelson,*
  868 F.3d 885 (10th Cir. 2017) ............................................................ 20

*United States v. Oates,*
  560 F.2d 45 (2d Cir. 1977) ........................................................... 45, 53

*United States v. Olano,*
  507 U.S. 725 (1993) ..................................................................... 55, 58

*United States v. Orellana-Blanco,*
  294 F.3d 1143 (9th Cir. 2002) ............................................................ 45

*United States v. Pagan-Santini,*
  451 F.3d 258 (1st Cir. 2006) .............................................................. 53

*United States v. Patterson,*
  20 F.3d 809 (10th Cir. 1994) .............................................................. 35

*United States v. Powell,*
  587 F.2d 443 (9th Cir. 1978) ....................................................... 34, 62

*United States v. Ramirez,*
   348 F.3d 1175 (10th Cir. 2003) ................................................... 19, 22

*United States v. Redbird,*
   73 F.4th 789 (10th Cir. 2023) ........................................................... 32

*United States v. Sawyer,*
   607 F.2d 1190 (7th Cir. 1979) ......................................................... 54

*United States v. Shumway,*
   112 F.3d 1413 (10th Cir. 1997) ............................. 27, 28, 29, 30, 34, 39

*United States v. Smith,*
   521 F.2d 957 (D.C. Cir. 1975) ........................................................ 53

*United States v. Snyder,*
   787 F.2d 1429 (10th Cir. 1986) .............................................. 5, 6, 46, 51

*United States v. Soundingsides,*
   820 F.2d 1232 (10th Cir. 1987) .................................................. 22, 34

*United States v. Talamante,*
   981 F.2d 1153 (10th Cir. 1992) ....................................................... 35

*United States v. Tan,*
   254 F.3d 1204 (10th Cir. 2001) ................... 23, 24, 25, 26, 27, 33, 34, 36

*United States v. Taylor,*
   514 F.3d 1092 (10th Cir. 2008) ............................................... 19, 22, 43

*United States v. Torralba-Mendia,*
   784 F.3d 652 (9th Cir. 2015) .......................................................... 54

*United States v. Walker,*
   918 F.3d 1134 (10th Cir. 2019) ....................................................... 47

*United States v. Young,*
   470 U.S. 1 (1985) ..................................................................... 58, 60

*United States v. Youts,*
   229 F.3d 1312 (10th Cir. 2000) ....................................................... 25

*United States v. Zamora,*
　222 F.3d 756 (10th Cir. 2000)........................................... 29, 40

## Federal Statutes

18 U.S.C. § 13(a)............................................................... 2

18 U.S.C. § 3553(a)...................................................... 14, 61

18 U.S.C. § 3553(a)(6).................................................. 61, 62

## State Statutes

Okla. Stat. § 1021(A)...................................................... 14

## Federal Rules

4 Fed. Evid.......................................................... 47, 48, 53

Fed. R. Evid. 403 ....................................8, 9, 10, 11, 12, 14, 31, 34, 35

Fed. R. Evid. 404(b).................................................... 2, 23

Fed. R. Evid. 803 ..................................................... 50, 52

Fed. R. Evid. 803(6) ...................................................... 2

Fed. R. Evid. 803(6)(B) ................................................. 42

Fed. R. Evid. 803(8) ................................................... 6, 44

## Other Authorities

4 Fed. Evid. § 8:90 (4th ed., updated Aug. 2023)................................. 45

## **Prior or Related Appeals**

There are no prior or related appeals.

## Statement of the Issues

I.    Mr. Johnson did not provide pretrial assurances that he would not contest intent and asked for a jury instruction advancing a theory of negligent exposure. Did the district court plainly err by admitting extrinsic evidence probative of Mr. Johnson's intent under Rule 404(b)?

II.    The district court determined the 404(b) evidence had significant probative value and mitigated potential for unfair prejudice with a limiting instruction. Did the district court abuse its discretion under Rule 403?

III.    This Court has never held that Rule 803(8) excludes evidence sought to be admitted under Rule 803(6). Did the district court plainly err in admitting nonadversarial BOP records under Rule 803(6)?

IV.    The district court determined there were no unwarranted sentencing disparities here. Did the district court commit legal error by relying on an individual assessment of Mr. Johnson instead of capping his sentence based on the average national statutory maximum?

## Statement of the Case

On April 17, 2023, Mr. Johnson pressed the emergency button in his cell at the Federal Transfer Center ("FTC") in Oklahoma City. A female guard, who was wrapping up a 16-hour shift, responded. She arrived to see Mr. Johnson, who was standing on a chair making his genitals viewable through the cell's window, stroking his penis. A grand jury in the Western District of Oklahoma returned an indictment charging Mr. Johnson with violating the federal Assimilated Crimes

Act, 18 U.S.C. § 13(a), assimilating Oklahoma's indecent exposure statute, Okla. Stat. tit., 21 § 1021(A)(1). ROA, Vol. I, at 13. Mr. Johnson was tried twice for this offense; his first trial resulted in a mistrial, but his second returned a conviction. ROA, Vol. I, at 318.

Prior to the first trial, the government filed a motion in limine seeking to admit Mr. Johnson's prisoner disciplinary log and discipline hearing officer (DHO) reports for instances where Mr. Johnson was reprimanded for "Engaging in Sexual Acts" by prison staff. ROA, Vol. I, at 16–17. The government argued that these items were admissible under Fed. R. Evid. 404(b) because they were offered to show Mr. Johnson's intent, knowledge, and lack of mistake, and as a business record under Fed. R. Evid. 803(6) ROA, Vol. I, at 17–22.

Before he responded to the government's motion, Mr. Johnson submitted proposed jury instructions, *see* ROA, Vol. I, at 52–75, which included the following: "A defendant does not act knowingly and willfully expose [sic] himself when the exposure is either done by accident or done negligently." *Id.* at 69.

Mr. Johnson opposed the admission of his disciplinary log and the DHO reports related to his prior masturbation. He argued his prior

reprimands for "Engaging in Sexual Acts" were not probative of his knowledge, intent, or lack of mistake because it was not clear that the BOP Code required exposure to be knowing and intentional. *Id.* at 119–21. Mr. Johnson also made a generalized argument that this evidence could not satisfy any requirements from *Huddleston v. United States*, 485 U.S. 681 (1988), arguing that

> First, it is not being offered for a proper purpose. Secondly, the relevance is questionable without any additional supporting evidence. Third, any probative value is substantially outweighed by prejudicial effect. And lastly, given the tremendous prejudicial effect, no proper limiting instruction could be given which would fully address the prejudicial effect of the admission of evidence.

*Id.* at 121–22. Mr. Johnson did not challenge this evidence on the ground that the actions alleged by the government necessarily established the requisite intent. *See generally id.* at 118–24.

Turning to the business records exception, Mr. Johnson's sole challenge was that the reports were not kept in the regular course of business. *Id.* at 122–23. Mr. Johnson did not argue that these records should be excluded based on Rule 803(8). *See generally id.* at 118–24.

The district court held a hearing on the government's motion in limine. ROA, Vol. III, at 40. The government presented testimony from

3

Travis Leissner, a special investigative agent at the FTC. *Id.* at 45.

Agent Leissner testified that he had provided Mr. Johnson's

disciplinary log to the government, that these logs are maintained in an

electronic database accessible to all BOP staff, the logs are updated by

lieutenants after an investigation into incidents reported by staff, and

the logs are regularly maintained. *Id.* at 46–47. He added that these

logs are used for administrative functions like determining an inmate's

custody points and privileges or determining aspects of their housing

including their custody level, their security level, and the proper

institution for housing. *Id.* at 47.

Agent Leissner testified that the DHO reports were prepared

within 14 days of an incident report. *Id.* at 48–49. The DHO is required

to determine if the alleged act had been committed and, if so, what

sanctions would be appropriate. *Id.* at 48–49. These reports are utilized

for the same purposes as the disciplinary log and, likewise, these

reports are stored in a database accessible by all BOP staff. *Id.* at 49.

At the close of this hearing, Mr. Johnson provided additional

arguments. On the Rule 404(b) issue, Mr. Johnson first argued his prior

incidents had no relevance because he did not "necessarily have to

willfully and intentionally expose himself in a lewd manner to anybody"
to be written up. ROA, Vol. III at 88. Further, allowing the government
to (as Mr. Johnson put it) prolong an otherwise simple trial by putting
on character evidence would needlessly confuse the jury. *Id.* at 88–89.
Mr. Johnson opposed even the admission of his redacted disciplinary log
citing, again, his belief that it was unclear whether, under BOP's
definition of sexual acts, he had to engage in "willful and knowing lewd
exhibition." *Id.* at 90–91. Mr. Johnson's counsel never advanced a
position that this evidence was irrelevant because the acts alleged, if
proved, necessarily established intent. *See id.* at 84–91.

On the issue of the business records exception, Mr. Johnson's
counsel argued this case was akin to *United States v. Snyder*, 787 F.2d
1429 (10th Cir. 1986), and reports documenting "something that doesn't
happen every day, where a party who's writing it may have an interest
in the outcome or a different viewpoint from the opposing party, those
things don't come in under business exceptions." ROA, Vol. III at 84–85.
His position was that, while ministerial aspects of a report satisfy the
business records exception, other aspects like narratives or opinions
should not. *Id.* at 86. He added while the DHO may not have been

involved in the underlying incident, they were employed by BOP nevertheless and should therefore be treated as if they have an interest in the outcome of the hearing. *Id.* at 87–88. For these reasons, Mr. Johnson reiterated his request that the DHO reports be categorically excluded. *Id.* While Mr. Johnson broadly stated an adversarial report does not have "the indicia of reliability" to just "open the door under the hearsay rule whether it's any exception of 803 but especially 803 sub 6," he never argued that any evidence should be excluded under the exclusionary clauses of Fed. R. Evid. 803(8). *See* ROA, Vol. III at 84–91.[1]

The district court granted in part and denied in part the government's motion in limine. ROA, Vol. I at 143–61.

Beginning with the Rule 404(b) issue, the district court analyzed the test set forth in *Huddletson*. ROA, Vol. I, at 145–56. As to factor one, the district court found that using Mr. Johnson's prior acts of masturbation to show knowledge, intent, and lack of mistake were

---

[1] While the public records exception was discussed, this discussion pertained to a civil district court case wherein a different judge excluded opinions from a police officer's accident report about fault and causation, ROA, Vol. III at 85–86, 93.

"clearly proper purposes" under Rule 404(b). *Id.* at 146–47. On factor

two, the district court found that while "not identical, the four prior acts

of masturbation are significantly similar to the alleged facts underlying

the charged offense." *Id.* at 148–50. And the jury was not required to

make a prohibited propensity inference because, instead, they could

follow the permissible "logic of improbability," which recognizes that if

Mr. Johnson had previously engaged in a prohibited act with the same

knowledge, then it was less likely that he engaged in the charged

conduct without the requisite knowledge. *Id.* at 150 (quoting *United

States v. Moran*, 503 F.3d 1135, 1145 (10th Cir. 2007)).

On factor three, which considers the application of Rule 403, the

district court made three determinations. First, under the "some

evidence" standard, the disciplinary reports were enough to establish

that Mr. Johnson committed these prior disciplinary infractions. *Id.* at

152–53. Second, masturbation fell under BOP's definition of Engaging

in Sexual Acts. *Id.* at 153–54. Third, the prejudicial effect of this

evidence could be minimized by testimony as to the disciplinary hearing

process, admission of the disciplinary log in lieu of the disciplinary

hearing reports, and appropriate limiting instructions. *Id.* at 154–55.

On the fourth and final factor the district court noted the government was not opposed to a limiting instruction prohibiting the jury from making propensity inferences. *Id.* at 155. Accordingly, the district court found the *Huddleston* factors were satisfied. *Id.* at 156.

The district court then addressed the business records exception. The district court found the disciplinary log would be admissible with the proper foundation. *Id.* at 157.  It noted the log entries were made near in time to the infractions, Mr. Johnson had not shown the preparation of the logs indicated they lack trustworthiness, and other courts had found similar records constituted business records. *Id.* at 157–58. But as to the DHO reports, the district court had layered hearsay concerns. *Id.* at 158. The district court ultimately concluded under Fed. R. Evid. 403, however, admission of the reports would be needlessly cumulative with the admission of the disciplinary log and would invite mini trials on the four alleged acts. *Id.* at 160–61.

Mr. Johnson was tried on August 16 and 17, 2023. ROA, Vol. III at 137–238. After the presentation of evidence, Mr. Johnson renewed his request for a jury instruction on negligent or accidental exposure. *Id.*  at 193–94. The district court denied this request. *Id.* The jury eventually

indicated they were hopelessly deadlocked, and the district court

declared a mistrial. *Id.* at 227–30.

The government filed a supplemental Rule 404(b) notice. *Id.* at

202–03. It noticed an intent to seek admission of the previously

admitted disciplinary log and, to seek to admit underlying incident

reports instead of the previously rejected DHO reports. *Id.* Whereas the

description of Mr. Johnson's behavior was layered hearsay in the DHO

reports, the incident reports were drafted by the reporting officer. The

underlying incident reports covered the following incidents,

- On March 11, 2021, "[a]t approximately 2305, while inside [an] office, [a guard] noticed [Mr. Johnson] laying in the top bunk in cell 409 stroking his erect penis in an up and down motion. He then proceeded to grabbed [sic] tissue and clean himself off, after that he cut the lights off and went sleep."

- "On December 29, 2022, at 5:22 p.m. while working suicide watch watching [Mr. Johnson], [a guard] observed inmate Johnson pull his penis out through his smock with his left hand and proceeded to stroke his penis. [The guard] then gave him an order to cease his actions in which he did stop[.]"

- "On December 29th, 2022 at approximately 5:30pm . . . Officer L. Burke was observing [Mr. Johnson] on suicide watch in medical observation when [Mr. Johnson] stood completely naked facing towards [the guard] holding his erect penis, and moving his right hand in a back and forth motion on his erect penis."

- "On [February 22, 2023,] . . . [Officer J. Rachal], made a round on range 2 at approximately 1:54 a.m. As [she] completed the round and turned back to exit, [she] noticed [Mr. Johnson] standing in

the window. He was holding his penis in his right hand and proceeded to ejaculate on the glass. [She] told [Mr. Johnson] that his behavior would not be tolerated and to get away from the window. [She] then proceeded to exit the range. [She] identified [Mr. Johnson] by his picture card attached to the door."

ROA, Vol. I, at 268–79.

Mr. Johnson's response incorporated his previous arguments. ROA Vol. I, at 219–20. He added that the district court's previous rationale for excluding the DHO reports should also apply to the underlying incident reports. *Id.*

Prior to Mr. Johnson's second trial, the district court issued a ruling on the supplemental 404(b) notice. *Id.* at 305–10. This order incorporated the previous ruling which found the redacted disciplinary log was admissible. *Id.* at 307–08. It then addressed the underlying incident reports and concluded they did not present the same layered hearsay concerns as the DHO reports. *Id.* at 308.

The district court then performed a Rule 403 analysis for the incident reports. Relying on its previous order, the district court repeated its conclusion that the prior incidents of masturbation, occurring mostly in front of female officers, within the short span of two years, had "significant probative value." *Id.* at 309. The district court

found the incident reports were not cumulative with the disciplinary logs because they provided "additional evidence that goes to Mr. Johnson's knowledge, intent, and absence of mistake or accident that is not part of the disciplinary log, which only lists the prior acts without any details or context." *Id.* at 309. Further, any prejudicial effect could be mitigated by limiting instructions. *Id.* The district court concluded the significant probative value of the non-cumulative incident reports did not substantially outweigh their prejudicial effect and the reports were not subject to exclusion under Rule 403. *Id.*

Mr. Johnson was tried for a second time on October 16–17, 2023. ROA. Vol. III, at 275–415. The principal witness in this case was Heather Ray, a correctional officer at the FTC. *Id.* at 292–93, 296. Ms. Ray testified that on April 17, 2023, she was working a double shift at the transfer center. *Id.* at 295. At 9:15pm, the center began lockdown, a period when all inmates are required to return to their cells for the evening. *Id.* at 297. She noticed Mr. Johnson was "slow playing" going back to his cell. *Id.* Ms. Ray said Mr. Johnson "was licking his lips, looking [her] up and down in a sexual manner." *Id.* Later, when Ms. Ray was in her office, she heard a noise indicating that an inmate had

pressed the duress alarm in a cell. *Id.* at 298–99. A board in the center
of the unit indicated the alarm was pressed in cell 312, Mr. Johnson's
cell. *Id.* at 299. Ms. Ray stopped short of responding to Mr. Johnson's
cell because when she was close enough, she was able to see Mr.
Johnson. *Id.* at 299–300. He had elevated himself in front of the cell
window and was stroking his erect penis. *Id.* Ms. Ray told Mr. Johnson
to stop, then immediately went to her office to report the incident. *Id.* at
300–01.

Video footage from the unit containing Mr. Johnson's cell
corroborated Ms. Ray's account. *Id.* at 301; Govt Ex 4. In the video,
someone is seen standing inside Mr. Johnson's cell in front of the
window. ROA, Vol. III, at 302–03; Govt Ex 4. The cell's main light then
switches off, and a small white light comes on next to the cell door
indicating that the duress alarm has been triggered. ROA, Vol. III, at
303; Govt Ex 4. Ms. Ray is then seen approaching the cell, but she
stops, points at the cell, then leaves. ROA, Vol. III, at 304; Govt Ex 4.
While it is too dark to see inside the cell in the video, Ms. Ray explained
every cell has a nightlight which remains on when the main light has
switched off. ROA, Vol. III, at 303. Between this nightlight, her close-up

view, and the adjustment of her eyes to the low-light environment, Ms. Ray was able to clearly see Mr. Johnson masturbating in the window of his cell. *Id.* 303–05.

Even though there were two men in Mr. Johnson's cell, Ms. Ray verified that Mr. Johnson was the one who exposed himself by using "bed book cards," which contained identifying information for each occupant of the cell. *Id.* at 305–06. Mr. Johnson had dreadlocks at the time of the offense, which were visible to Ms. Ray through the cell window. *Id.* at 296, 300. Mr. Johnson's cellmate had short hair. *Id.* at 315; Supp. ROA, at 8.

The government admitted Mr. Johnson's disciplinary log and the underlying incident reports through Mr. Leissner. *Id.* at 356, 363–64. Mr. Johnson objected contemporaneously to the admission of these documents but only renewed his previous arguments in support of his objection. *Id*. at 363–64. After the government rested its case, the jury was given a standard limiting instruction on bad acts evidence. *Id.* at 384; ROA, Vol. I, at 335.

Mr. Johnson again requested a jury instruction on negligent exposure. ROA, Vol. III at 388. The district court found no authority for

the specific instruction and "that an instruction on negligent exposure [was] not covered by the facts and evidence presented at trial." *Id.* at 389–90. But noted Mr. Johnson was free to argue his conduct was not willful or knowing. *Id.*

Mr. Johnson was found guilty of Indecent Exposure. ROA, Vol. I, at 218.

On March 27, 2024, the United States Probation Office issued its final Presentence Investigation Report (PSR). ROA, Vol. II, at 32–63. The PSR found there was no expressly promulgated guideline for this offense, nor was there a sufficiently analogous guideline. *Id.* at 38 (¶ 19). The PSR noted that Oklahoma law provided a minimum sentence of 30 days and a maximum sentence of 10 years for this offense. *Id.* at 56 (¶ 80) (citing Okla. Stat. § 1021(A)). Because there was no sufficiently analogous guideline, the PSR concluded the sentence should be determined through the application of 18 U.S.C. § 3553(a). *Id.* at 56 (¶ 81).

Mr. Johnson argued he should not receive a higher sentence for indecent exposure just because he committed the offense in Oklahoma. His sentencing memorandum cited a sampling of out-of-state indecent

exposure offenses subject to a maximum sentence of less than six months. ROA, Vol. I, at 351–55. At sentencing, Mr. Johnson's counsel noted he was "shocked at how broad the range of punishment is in Oklahoma compared to the bulk of other states" and stated was "no state outside of Oklahoma where you could get three years – or over three years for a first conviction." ROA, Vol. III at 441.

The district court sentenced Mr. Johnson to a term of 36 months imprisonment to run consecutive with the remainder of his two prior federal convictions. *Id.* at 451–52. The district court first found the nature and circumstances of the offense—the sexual humiliation of a woman serving in a community safety position—were serious. *Id.* at 446. And given Mr. Johnson's history of similar conduct, a "significant" punishment was warranted. *Id.* at 447. Additionally, Mr. Johnson's conduct while in custody, including striking a female officer while he was detained during this case was "concerning from a protection of the public or safety standpoint." *Id.* at 447–48. Mr. Johnson's violent criminal history demonstrated a need to protect the public from Mr. Johnson, and to deter him from future criminality. *Id.* at 448.

As to sentencing disparities, the district court acknowledged Mr.

Johnson's arguments about nationwide sentencing ranges. *Id.* at 450.
But the court went on to explain: "[T]he factor to consider, and I'll note
it's just one of many factors to consider, is the need to avoid
unwarranted sentencing disparities among defendants with similar
records who have been found guilty of similar conduct." *Id.* The district
court cited the broad range of federal sentences for this offense within
the district as evidence that the sentence should be determined on an
individual basis. *Id.* at 451. And in this case, the district court had
before it an individual with a record of committing similar offenses
while in custody, "with no signs of abatement." *Id.* The district court
found, given its individualized assessment of Mr. Johnson, no
sentencing disparities should result from his sentence. *Id.* "[B]ut if
there [were] disparities between his sentence and others," the district
court found "them to be warranted." *Id.*

Mr. Johnson now appeals his conviction and sentence.

## Summary of the Argument

Mr. Johnson first claims the district court erred in admitting his
disciplinary log and incident reports under Rule 404(b). He alleges
intent was "uncontestable" in this case and, therefore, any extrinsic

evidence bearing on intent was not admitted for a proper purpose under Rule 404(b). Mr. Johnson gave no enforceable pretrial assurances that he was not contesting intent. Indeed, he signaled his plan to contest intent by requesting an instruction on negligent exposure. Under these circumstances, the district court did not err by concluding extrinsic evidence on intent was admitted for a proper purpose under Rule 404(b). Additionally, this Court has previously rejected the argument that extrinsic intent evidence is improper if intent can be shown through the acts alleged. Accordingly, any error was not plain under controlling precedent.

Mr. Johnson an alternative claim that the district court should have excluded this evidence under Rule 403. The district court concluded this evidence was highly probative of intent and mitigated any unfair prejudice with a limiting instruction. Given the significant deference afforded to district courts on Rule 403 determinations, the district court did not abuse its discretion in determining the high probative value of this evidence was not substantially outweighed by its potential for unfair prejudice.

Mr. Johnson asserts that the district court committed plain error in failing to, *sua sponte*, exclude the disciplinary log and incident reports under Rule 803(8). First, this Court has previously held that records properly admitted under Rule 803(6) were not subject to Rule 803(8) exclusion. Next, these records were not created to advance a criminal prosecution and are therefore not subject to Rule 803(8) exclusion. Even if there was error, Mr. Johnson has not shown the error was plain or obvious given this Court's prior ruling on this issue, the lack of any textual indication that Rule 803(8) extends beyond public records, and the lack of uniformity among circuits addressing this issue. Further, this error did not affect Mr. Johnson's substantial rights since the evidence in question went to an element he admits was "uncontestable" in this case. Finally, this Court should decline to address this issue which calls for a novel ruling on a record that is underdeveloped given the lack of presentation below.

Finally, Mr. Johnson claims the district court relied on an improper factor when addressing the potential for sentencing disparities. He argues that because most jurisdictions have a lower statutory maximum than the sentence imposed in his case, any factor

raising his sentence beyond that average maximum is irrelevant since it could not provide for an increased sentence in most jurisdictions. This argument ignores the specific clause of § 3553(a), which asks the Court to consider the proper sentence for a defendant both with a similar record and convicted of similar conduct. To the extent any disparity is present here, the reasons for that disparity—the higher statutory ceiling and Mr. Johnson's history and characteristics—are apparent from the record.

## Argument

**I.  The district court committed no error under Rule 404(b) by admitting evidence related to Mr. Johnson's prior sexual acts**

### A.  The Court should review this claim for plain error.

"[W]here a party seeks on appeal to raise an issue not squarely presented to the district court in order to allow it to exercise its judgment in the first instance—we traditionally review only for plain error." *United States v. Taylor*, 514 F.3d 1092, 1096 (10th Cir. 2008). "The specific ground for reversal of an evidentiary ruling on appeal must be the same as that raised at trial." *United States v. Ramirez*, 348 F.3d 1175, 1181 (10th Cir. 2003) (cleaned up). Mr. Johnson is correct

that a party need not "use any particular language . . . to preserve an issue for appeal." Aplt's Br. 44 (quoting *United States v. Cates*, 73 F.4th 795, 809 (10th Cir. 2023) (citations and ellipses omitted)). But the "general rule against considering new arguments on appeal applies equally when a litigant changes to a new theory on appeal that falls under the same general category as an argument presented at trial." *United States v. Nelson*, 868 F.3d 885, 891 n.4 (10th Cir. 2017) (internal quotation omitted). And a "party does not preserve an issue merely by presenting it to the district court in a vague or ambiguous manner, or by making a fleeting contention before the district court." *Cates*, 73 F.4th at 809. In the end, "the question is simply whether the claimed issue was brought to the court's attention." *Id.* (cleaned up).

Mr. Johnson claim on appeal that, "[b]ecause mens rea was uncontestable in this case, the district court abused its discretion under Rule 404(b)." Aplt's Br. at 24. He argues that the requisite intent for this offense was necessarily proven if the jury found he "did what he was accused of doing" and, therefore, the government was precluded from using prior bad acts evidence to show knowledge, intent, or lack of mistake. *Id.* at 20. Mr. Johnson never asked the district court to rule on

anything resembling this claim below.

Instead, Mr. Johnson challenged this evidence through the *Huddleston* test. ROA, Vol. I, at 121. He raised two arguments related to 404(b). Addressing the first *Huddleston* factor, he claimed evidence of his prior masturbation was "not being offered for a proper purpose" because "the government fail[ed] to sufficiently articulate the reasoning that this information is necessary to show intent, knowledge, or lack of mistake." *Id.* at 119, 121. Addressing the second factor, Mr. Johnson claimed, "the relevance is questionable without any additional supporting evidence." *Id.* at 121. Within this second argument, he raised specific challenges as to what he believed was missing from each incident to make the incidents relevant. *Id.* 120–21. He repeated these arguments at the motion hearing. ROA, Vol. III, at 88.

At no point did Mr. Johnson claim that intent was not an issue. In fact, his position on appeal contradicts the defense he foreshadowed in his requested jury instruction on negligent exposure. *See id.* at 72–78. Mr. Johnson's argument as to proper purpose was generalized and did not raise this specific issue. *United States v. Leib*, 57 F.4th 1122, 1128, n.4 (10th Cir. 2023). And his arguments as to relevance concerned the

specifics of his prior conduct—not whether his intent was genuinely at issue. Because his district court argument does not match his appellate argument and was never squarely presented to the district court, this issue is unpreserved, and review is limited to plain error. *Taylor*, 514 F.3d at 1096; *Ramirez*, 348 F.3d at 1181.

To prevail under plain error, Mr. Johnson must show "1) error, (2) that is plain, which (3) affects the defendant's substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Taylor*, 514 F.3d at 1100.

## B. The district court did not err in weighing the *Huddleston* factors.

Mr. Johnson's first challenge is to the district court's ruling that evidence of his prior sexual misconduct was properly admitted under Rule 404(b) to show knowledge, intent, and lack of mistake. On appeal, he argues the district court should have barred this evidence because his intent was not a genuine issue in this case. This argument overlooks the permissive nature of Rule 404(b) and ignores Mr. Johnson's theory of defense below. It also relies on an expansion of this Court's pre-*Huddleston* decision in *United States v. Soundingsides*, 820 F.2d 1232, 1237 (10th Cir. 1987). But the *Huddleston* analysis adequately accounts

22

for the concerns that that earlier case sought to address. That is why this Court has not applied *Soundingsides* to exclude Rule 404(b) evidence. Instead of adopting a pre-*Huddleston* theory that Mr. Johnson did not advance, the district court followed and accurately weighed the *Huddleston* factors. Accordingly, Mr. Johnson has not shown the district court plainly erred under Rule 404(b).

    **i.** <u>The district court did not err in admitting evidence under Rule 404(b) that was probative of a necessary element of the offense</u>.

Rule 404(b) provides that evidence of a defendant's "other crime, wrong, or act" may be admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). Here, Mr. Johnson's prior prison sexual misconduct history—specifically, exposing himself and masturbating in the presence of other correctional officers—was introduced to prove the knowledge element of the crime charged.

"Rule 404(b) is considered to be an inclusive rule, admitting all evidence of other crimes or acts except that which tends to prove *only* criminal disposition." *United States v. Tan*, 254 F.3d 1204, 1208 (10th Cir. 2001) (internal quotation omitted, emphasis original)); *see*

*also Huddleston*, 485 U.S. at 687 (explaining Rule 404(b) does not "flatly prohibit" introduction of evidence but instead "limit[s] the purpose for which it may be introduced").

Rule 404(b) evidence "is properly admitted" if four requirements are met:

1. The evidence is offered for a proper purpose under Rule 404(b);

2. The evidence is relevant under Rule 401;

3. The probative value of the evidence is not substantially outweighed by its potential for unfair prejudice under Rule 403; and

4.  The district court, if requested, mitigates the risk of misuse of the evidence through a limiting instruction.

*See Tan*, 254 F.3d at 1208.

In his appeal, Mr. Johnson focuses on the first and third requirements. But the district court considered all four requirements and found them satisfied. *See* ROA, Vol. I, at 146–56 (analyzing the 404(b) evidence proposed for the first trial); *id.* at 307–08 (incorporating by reference the prior order and analyzing the *Huddleston* factors as it related to the incident reports).

Mr. Johnson's newfound *Soundingsides* argument, that the district court should have excluded the prior misconduct evidence

because intent was not disputed where it was obvious from the conduct charged, does not fit neatly within the *Huddleston* factors. That makes sense, as *Soundingsides* was issued before *Huddleston*'s "more inclusive approach to Rule 404(b) evidence." *See United States v. Youts*, 229 F.3d 1312, 1319 (10th Cir. 2000).

Since *Huddleston*, it does not appear that this Court has directly followed *Soundingsides* to exclude any prior-bad-acts evidence. Instead, it has only distinguished *Soundingsides* while applying the *Huddleston* analysis. *See, e.g., Tan*, 254 F.3d at 1209–11 (reversing the district court's ruling, under *Soundingsides*, that prior drunk driving convictions were not offered for a proper purpose).

In effect, Mr. Johnson seeks to do on appeal via *Soundingsides* what he could not do through *Huddleston* below. And by applying this pre-*Huddleston* case to exclude evidence supporting an unconceded element of the offense, Mr. Johnson effectively seeks to expand the ruling from *Old Chief v. United States*, 519 U.S. 172 (1997), beyond the context of stipulations of convicted-felon status and turn it into a tool for "telling the government how to prove a particular element." *See United States v. Herrera*, 51 F.4th 1226, 1255–56 (10th Cir. 2022);

25

Aplt's Br. 26 (citing *Old Chief*). But the Court has repeatedly rejected

such attempts. *See United States v. Martinez*, 92 F.4th 1213, 1243–44

(10th Cir. 2024) (rejecting argument, based in part on *Soundingsides*,

that by conceding to an enterprise, prior murders committed in

furtherance of the enterprise should not be admitted); *Herrara*, 51

F.4th at 1256 (declining "to apply *Old Chief*'s limited exception to

interfere with the prosecution's choice of evidence when the defendant

doesn't offer to stipulate."); *see also Tan*, 254 F.3d 1204, 1213 (10th Cir.

2001) (same).

Now the considerations motivating *Soundingsides* are better

accounted for by *Huddleston's* third requirement, that the probative

value of the prior acts be not "substantially outweighed by its potential

for unfair prejudice." *See Tan*, 254 F.3d at 1207; *cf. id.* at 1209 (stating

that *Soundingsides*'s ultimate holding was that the evidence failed

Rule 403 balancing and not proper purpose).

### a. Proving knowledge is a proper purpose.

The threshold inquiry of Rule 404(b) is narrow; it looks only for

whether evidence is offered for a non-propensity purpose. *Tan*, 254 F.3d

at 1208. As the district court correctly identified, "knowledge, intent,

and lack of mistake . . . . are clearly proper purposes for the

introduction of Rule 404(b) evidence," ROA, Vol. I, at 146–47. *See*

*United States v. Henthorn*, 864 F.3d 1241, 1248 (10th Cir. 2017)

("Evidence is offered for a proper purpose if it is utilized for any of the

other purposes enumerated in Rule 404(b)," (internal quotation

omitted)); *Tan*, 254 F.3d at 1208, n.3 ("Proving intent is always a proper

purpose under Rule 404(b)."). Since the evidence here was offered to

prove matters expressly set forth in the rule, and it did not "tend[] to

prove *only* criminal disposition," it passes the Rule 404(b) threshold. *See*

*Tan*, 254 F.3d at 1208.

Unless a defendant stipulates that he is not contesting intent,

extrinsic evidence of intent is both relevant and proper. In fact, even

when a defendant stipulates to an element, extrinsic evidence may still

be found to be both relevant and proper based on the "considerable

discretion" of the trial judge. *See Martinez*, 92 F.4th at 1241, 1248 This

Court has held that when a defendant "stand[s] on his not guilty plea,

and . . . fail[s] to give enforceable pretrial assurances he did not intend

to dispute criminal intent, the government may include such extrinsic

offense evidence as would be admissible if intent were actively

27

contested." *United States v. Shumway*, 112 F.3d 1413, 1421 (10th Cir. 1997) (internal quotation omitted); *see also United States v. Harrison*, 942 F.2d 751, 760 (10th Cir. 1991) ("Faced with a plea of not guilty, the government need not await the defendant's denial of intent on the witness stand before offering evidence of similar relevant acts.").

Such is the case even when the defendant's defense is that he did not commit the charged acts. *Shumway*, 112 F.3d at 1420–21 (holding there was no error in admitting Rule 404(b) evidence on intent where the charge required the government to prove the defendant acted willfully and "Mr. Shumway's counsel stated his main defense would be that Mr. Shumway was not the person involved"). Where knowledge or willfulness are elements of the charged offense, then Rule 404(b) evidence tending to establish these elements is "clearly relevant." *Shumway*, 112 F.3d at 1421–22.

> **b. Mr. Johnson's four prior instances of masturbating in front of prison staff within two years were relevant to the knowledge element of the offense.**

The evidence at issue showed that Mr. Johnson engaged in "substantially similar" conduct within two years of the offense in this case. *See* ROA, Vol. I, at 148 (district court concluding that three of the

acts "occurred within months" and all within two years of the charged offense); *see also id.*, at 127–39 (underlying incident reports). The timing and obvious similarity to the charged conduct makes it more relevant on the issue of knowledge. *See United States v. Zamora*, 222 F.3d 756, 762 (10th Cir. 2000) (recognizing the "as long as the uncharged acts are similar to the charged crime and sufficiently close in time").

The offense in question required a showing that Mr. Johnson acted "willfully and knowingly." ROA, Vol. I, at 337. To commit an act "willfully" Mr. Johnson needed only "a purpose or willingness to commit the act or the omission referred to." *Id.* at 338. But to also commit the act "knowingly," Mr. Johnson had to have "a knowledge that the facts exist which bring the act or omission within the provisions of this code." *Id.* In this context, Mr. Johnson had to know that he was exposing his genitals in a lewd manner "in a place where there were present other persons to be offended or annoyed thereby." *Id.* at 337. Because Mr. Johnson was charged with an offense for which knowledge and willfulness were a required showing, and because he did not give enforceable pretrial assurances that he did not intend to dispute

criminal intent, the government was permitted to present evidence of other acts probative of intent. *See Shumway*, 112 F.3d at 1421.

Mr. Johnson claims that the only mens rea required for this offense was, essentially, voluntariness. Aplt's Br. at 22–23. His analysis focuses entirely on the low bar of showing willfulness under Oklahoma law and does not address the knowledge requirement. *Id.*

The crux of his claim is that intent was not in dispute in this case because the acts alleged, if proven, necessarily demonstrated he acted with the requisite intent. *Id.* This theory is at odds with his defense below which signaled an intent to challenge mens rea. Mr. Johnson insisted early on that the jury be instructed on negligent exposure. *See* ROA, Vol. I, at 69, 72–74; ROA, Vol. III, at 193–95. Even after hearing the government's theory of the case laid out in the first trial, Mr. Johnson continued to push for this instruction. ROA, Vol. III, at 388.

Despite the district court's skepticism about the validity of any intent defense, the court noted at both trials Mr. Johnson was free to argue he did not act willfully and knowingly. *Id.* at 195, 389. While Mr. Johnson ultimately abandoned this defense at both trials, this Court should not invalidate an evidentiary ruling in hindsight because he

later declined to raise a particular defense. *See Havelock v. United States,* 427 F.2d 987, 990–91 (10th Cir. 1970) ("It would be awkward to refuse evidence bearing on an element of the crime because, through hindsight, we are able to say that it proved unnecessary in the end.").

And as the evidence that Mr. Johnson had engaged in substantially the same conduct within a short period of time tended to make his knowledge—one of the required elements of the offense—more probable than it would be without the evidence, this evidence far exceeded Rule 401's minimal threshold of relevance.

### c. The district court correctly balanced the Rule 403 considerations.

*Huddleston*'s third requirement is a high bar. It requires that the risk of unfair prejudice "substantially outweigh" the probative value of the relevant evidence. Fed. R. Evid. 403. Whereas *Huddleston* confines the Rule 403 analysis within its third factor, Mr. Johnson makes his Rule 403 argument in the alternative to his Rule 404(b) argument. The two arguments rely on much of the same reasoning. As explained more thoroughly below, there was no error in admitting this evidence under Rule 403. *See supra* § II.

### d. The district court mitigated unfair prejudice with a proper limiting instruction.

The final *Huddleston* factor requires the district court, upon request, to instruct the jury that the Rule 404(b) evidence may only be used for limited purposes. Mr. Johnson does not challenge the propriety of the district court's limiting instructions which were given upon his request, ROA, Vol. III, at 109–10, and which substantially matched the limiting instruction he originally requested, *compare* ROA, Vol. I, at 109, *with id.* at 335.

  ii. Any error in admitting this Rule 404(b) evidence was not clear or obvious.

Even if the district court had erred in admitting evidence of intent where intent was uncontested, the error was not plainly obvious under controlling precedent. To prevail on plain error, Mr. Johnson must show the error he alleges was "clear or obvious under current law." *United States v. Redbird*, 73 F.4th 789, 793 (10th Cir. 2023). "Generally speaking, [this Court] do[es] not deem an error to be obvious and clear unless it is contrary to current well-settled law—that is, to the current law of the Supreme Court or the Tenth Circuit." *United States v. Lacy*, 904 F.3d 889, 893 (10th Cir. 2018) (internal quotation omitted). Mr.

32

Johnson has not pointed to a single case from this Court or the Supreme Court adopting his interpretation of Rule 404(b).

Mr. Johnson relies on *Soundingsides* in support of his claim that "prior misconduct is admissible to show knowledge, intent, or lack of mistake only if it actually rebuts a plausible, innocent explanation for the alleged misconduct." Aplt's Br. at 21. But in *Tan*, this Court reversed a lower court order excluding Rule 404(b) evidence on the grounds raised by Mr. Johnson. *See* 254 F.3d at 1209. There, the district court found that prior acts of drunk driving were not admissible to prove intent in a second-degree murder case involving a drunk driving incident. *Id.* at 1206–07. The district court in that case stated, "[d]espite the fact that evidence of other crimes may sometimes be admissible under Rule 404(b) to prove intent, as explained below, *I conclude that this is not a proper purpose in this case*" and that district court relied in large part on the *Soundingsides* to justify its decision. *Tan*, 254 F.3d at 1208–09. This Court clarified that the holding in *Soundingsides* rested on an application of Rule 403, *not* Rule 404(b). And therefore, "*Soundingsides* provide[d] no support for the district court's conclusion that the evidence of Defendant's past drunk driving

convictions was not offered for a proper purpose under Rule 404(b)."
*Tan*, 254 F.3d at 1209. Likewise, *Soundingsides* provides no support for
Mr. Johnson's argument that this evidence was improperly admitted
under Rule 404(b).

Further, the *Soundingsides* decision itself rejected Mr. Johnson's
approach. There, the Court expressly declined to adopt the approach of
the Ninth Circuit, which had held that "when participation in the acts
charged is denied, intent is not a material issue for the purpose of
applying Rule 404(b)." *Soundingsides*, 820 F.2d at 1238 (citing *United
States v. Powell*, 587 F.2d 443, 448 (9th Cir. 1978)). Mr. Johnson
advocates for precisely this approach. *See* Aplt's Br. 24.

Mr. Johnson's approach has never been adopted by this Court and
has, in fact, been routinely rejected. *See, e.g., Tan* 254 F.3d at 1208–09,
*Shumway*, 112 F.3d at 1421–22, *Soundingsides*, 820 F.2d at 1238. Any
error was not plain or obvious given this precedent.

## II. The district court did not abuse its discretion in declining to exclude the prior bad acts evidence under Rule 403.

Mr. Johnson claims, in the alternative, that if the prior bad acts
evidence was properly admitted under Rule 404(b) the district court
should have excluded it under Rule 403. Aplt's Br. at 25. This Court

typically reviews preserved Rule 403 determinations for abuse of discretion. *United States v. Archuleta*, 737 F.3d 1287, 1292 (10th Cir. 2013). Mr. Johnson did raise a Rule 403 challenge to this evidence below. *See* ROA, Vol. I, at 121–22, 220. But his Rule 403 challenge on appeal is premised on the same arguments underpinning his 404(b) challenge—the probative value of this evidence was low because intent was not a material issue. *See* Aplt's Br. 40–41. This line of argument was not presented to the district court. *See* ROA, Vol. I, at 121–22, 220. As with the above claims, these arguments should be reviewed for plain error only.

To the extent Mr. Johnson has revived his generalized Rule 403 challenge, this court should apply abuse of discretion review. "Under this standard, [this Court] will not disturb a trial court's decision unless we have a definite and firm conviction that the [trial] court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *United States v. Talamante*, 981 F.2d 1153, 1155 (10th Cir. 1992) (internal quotation omitted).

A court may exclude evidence if its probative value is "substantially outweighed" by any danger of unfair prejudice. Fed R.

Evid. 403. "[T]he trial court has broad discretion in determining whether the prejudice of the offered testimony substantially outweighed the probative value." *United States v. Patterson*, 20 F.3d 809, 814 (10th Cir. 1994). In making this determination, district courts "give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." *United States v. Gallegos*, 111 F.4th 1068, 1092 (10th Cir. 2024) (internal quotation omitted). Excluding evidence under Rule 403 "is an extraordinary remedy and should be used sparingly." *Tan*, 254 F.3d at 1211 (internal quotation omitted).

"On appeal, [this Court] do[es] not balance the probative value against the risk of unfair prejudice in the first instance." *Herrera*, 51 F.4th at 1262. This Court is "required to give the trial court 'substantial deference' in Rule 403 rulings." *Id.* This deference recognizes that "district court judges have front-row seats during trial and extensive experience ruling on evidentiary issues." *United States v. MacKay,* 715 F.3d 807, 839 (10th Cir. 2013) (internal quotations omitted). In fact, this Court has gone so far as to say its "own view of [Rule 403 balancing] is not relevant under the applicable standard of review." *United States v. Cerno*, 529 F.3d 926, 933 (10th Cir. 2008).

36

The probative value of this evidence was high. Where the evidence in question is probative of an element of the crime (here, knowledge), the evidence carries "significant probative value." *Tan*, 254 F.3d at 1212. Where a defendant's intent can be inferred from his actions, the probative value of extrinsic evidence bearing on intent is decreased—but not eliminated entirely. *See id.* at 1212 & n.8. But the probative value of this evidence is further enhanced by its similarity to the charged offense and the temporal proximity of the prior conduct. As the district court correctly observed:

> All four other acts and the charged offense in Count One involve allegations that Mr. Johnson masturbated in front of a BOP officer, most of those officers being female, while incarcerated in BOP custody within a span of almost two years. Accordingly, they have significant probative value.

ROA, Vol. I, at 309.

The probative value of this evidence was not substantially outweighed by the danger it posed for unfair prejudice. "Evidence is unfairly prejudicial if it makes a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged." *United*

*States v. Merritt*, 961 F.3d 1105, 1115 (10th Cir. 2020). That said,

exclusion under Rule 403 is not automatic if the evidence "makes a

conviction more likely because it adversely affects the jury's attitude

toward the defendant . . . the risk of prejudice must *substantially*

outweigh the probative value of the evidence for a court to exclude it."

*United State v. Murry*, 31 F.4th 1274, 1292 (10th Cir. 2022) (emphasis

original).

As the district court recognized, this evidence was highly similar

to the charged conduct and therefore had significant probative value.

ROA, Vol. I, at 309. Although the admission of more than one source of

evidence proving Mr. Johnson engaged in these prior acts of

masturbation bore some risk of presenting cumulative evidence, the

district court found this risk did not substantially outweigh the

probative value of the evidence. In any event, the jury here was

instructed to only use this evidence as it bore on Mr. Johnson's "intent,

knowledge, or absence of mistake or accident," ROA, Vol. I, at 335. The

instruction directly addressed Mr. Johnson's concern that the jury

might use these previous acts to decide, irrespective of the evidence,

that he was guilty of this offense. It informed the jury: "the fact, that

the defendant may have previously committed an act similar to the one charged in this case does not mean that the defendant necessarily committed the act charged in this case." *Id.* This ruling here falls far short of abusing the discretion afforded to the district court on this issue. *Cf. Cerno*, 529 F.3d at 928–35 (upholding a 403 determination to allow evidence of prior unsavory sexual activity admitted without a limiting instruction).

Mr. Johnson claims the probative value of this evidence was "minimal" and refers to his previous arguments related to Rule 404(b). Aplt's Br. at 25–26. He is incorrect for two reasons. First, as established above, even though intent can be inferred from Mr. Johnson's actions, intent was far from undisputed here. Mr. Johnson evidenced an intent to litigate this element through his requested jury instruction on negligent exposure. Second, a decrease in probative value does not result in automatic exclusion under Rule 403. As discussed above, *Shumway* presented a similar circumstance where a defendant did not specifically challenge intent and only disputed whether he committed the alleged acts, 112 F.3d at 1419–22. This Court concluded, under the highly deferential Rule 403 standard, the district court did not err in

admitting Rule 404(b) evidence despite the decreased probative value of that evidence. *Id.* Additionally, this specific argument was not presented to the district court. This Court should not find the district court abused its discretion in failing to consider arguments that were not presented to it.

Next, Mr. Johnson claims this evidence bore an "extreme" and "substantial" risk for unfair prejudice. Aplt's Br. 26–27. As with any Rule 404(b) evidence, this evidence contained some risk of unfair prejudice. Mr. Johnson attempts to use the high degree of similarity between all his sexual misconduct incidents as a sword, arguing that the jury might have had difficulty separating the evidence of uncharged conduct from the evidence of charged conduct. Aplt's Br. 28. But the very similarities highlighted by Mr. Johnson only reinforce the probative value of this evidence. *See Zamora*, 222 F.3d at 762.

All told, the risk of unfair prejudice did not outweigh, let alone *substantially* outweigh, the highly probative Rule 404(b) evidence in this case. Admitting this evidence was within the district court's substantial discretion over evidentiary decisions.

## III. The district court properly admitted the BOP administrative disciplinary records under Rule 803(6) and

**did not plainly err in not sua sponte excluding them under Rule 803(8)(ii) or (iii).**

Mr. Johnson posits that the district court erred in failing to *sua sponte* exclude the disciplinary log and incident reports under Rule 803(8). This is a new theory for challenging Rule 803(6) evidence— new for this case and new for this Circuit. And even if it had been raised below, it would face the deferential standard of review afforded hearsay rulings.

A trial court is afforded "very broad discretion" over evidentiary rulings. *United States v. Keck*, 643 F.3d 789, 795 (10th 2011). Appellate review of hearsay objections is "especially deferential" because "hearsay determinations are particularly fact and case specific." *United States v. Harper*, 118 F.4th 1288, 1295–96 (10th Cir. 2024). (internal quotations omitted).

When a challenge to an evidentiary ruling is not preserved—such as, when a party advances for the first time on appeal an entirely different theory for challenging a ruling—then the "rigorous plain-error test" applies. *See United States v. Leffler*, 942 F.3d 1192, 1196 (10th Cir. 2019).

i.    <u>Mr. Johnson's new theory about Rule 803(8)'s exceptions is subject to plain error review.</u>

Mr. Johnson never invoked Rule 803(8). He did not rely on the rule in his original response to the government's motion in limine, ROA, Vol. I, at 118–24, his oral arguments on the motion, ROA, Vol. III, at 84–91, or his response to the government's supplemental Rule 404(b) notice, 219–21.

Mr. Johnson now claims he presented the issue through his arguments addressing Rule 803(6). Aplt's Br. 30. But the arguments he references in his brief were specific arguments addressing whether this evidence was kept in the regular course of business, made as part of a regular business activity, or lacked trustworthiness. ROA, Vol. III, at 85–88. They concerned Rule 803(6), the business records exception, not Rule 803(8).[2] Fed. R. Evid. 803(6)(B)–(C), (E). The one implicit reference to Rule 803(8) was made while discussing a different case. ROA, Vol. III, at 86. And Mr. Johnson made this reference to illustrate his point about reliability under Rule 803(6)(E). *See*, ROA, Vol. III at 86–88

---

[2] Mr. Johnson does not challenge the district court's application of the business records exception in this appeal. Although he cabins this issue under headings referencing Rule 803(6), his claim of error is premised entirely on the application of Rule 803(8).

42

("[T]hose are types of things that don't have the indicia of reliability where we just open the door under the hearsay rule whether it[']s any exception of 803 but especially 803 sub 6.").

At no point did Mr. Johnson make the highly specific argument he makes here: that Rule 803(8)(ii) is an affirmative rule of exclusion categorically prohibiting all out-of-court statements made by law enforcement personnel no matter if they meet any other hearsay exception under Rule 803. Aplt's Br. 31–32. The government noticed its intent to offer the BOP administrative disciplinary records as Rule 404(b) evidence long before trial. *See* ROA, Vol. I, at 16–40. Yet Mr. Johnson offers no excuse for not making this argument at any point prior to this appeal. And, as Mr. Johnson's brief illustrates, presenting this argument would have required him to advocate for the application of out-of-circuit precedent and request a novel ruling that BOP personnel qualify as law enforcement under this rule and that their administrative disciplinary process incident reports were adversarial. *See* Aplt's Br. 37–40. The issue was not squarely presented to the district court for a ruling and should, therefore, only be reviewed for plain error. *See Taylor*, 514 F.3d at 1096.

43

To prevail under plain error, Mr. Johnson must show "(1) error, (2) that is plain, which (3) affects the defendant's substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 1100.

ii. <u>This Court has never held Rule 803(8) operates to exclude properly admitted business records.</u>

Even if Rule 803(8) applies here, the district court did not err in failing to exclude evidence because the BOP officials in this case were not acting as "law enforcement personnel" as contemplated in the Rule.

By its plain terms, Rule 803(8) does not extent past the public records exception. The rule states:

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness: . . .
>
> (8) Public Records. A record or statement of a public office if:
>
>> (A) it sets out:
>>
>>> (i) the office's activities;
>>>
>>> (ii) a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel; or
>>>
>>> (iii) in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation; and
>>
>> (B) the opponent does not show that the source of information

or other circumstances indicate a lack of trustworthiness.
Fed. R. Evid. 803(8).

Some courts have treated 803(8)(ii) as an outlier among hearsay rules. "[U]sually the language of a limitation found in any given hearsay exception does no more than limit use of the very exception in which the language appears." Christopher B. Mueller and Laird C. Kirkpatrick, 4 Fed. Evid. § 8:90 (4th ed., updated Aug. 2023) ("Mueller & Kirkpatrick"). But a few courts, have held the Rule 803(8)'s exceptions apply with equal force to evidence sought for admission as a business record under Rule 803(6). This line of cases began with the Second Circuit's decision *United States v. Oates*, 560 F.2d 45, 77 (2d Cir. 1977). *See also United States v. Cain*, 615 F.2d 380, 381–82 (5th Cir. 1980); *United States v. Blackburn*, 992 F.2d 666, 670–71 (7th Cir. 1993); *United States v. Orellana-Blanco*, 294 F.3d 1143, 1150–51 (9th Cir. 2002).

But this Court has never extended the exclusionary portion of Rule 803(8) beyond public records. *See United States v. Hayes*, 861 F.2d 1225 (10th Cir. 1988). In *Hayes*, the Court discussed the various criticisms of the "unduly overbroad interpretation" of the *Oates* decision.

*Id.* at 1229–30. It ultimately confined the discussion to dicta and concluded, "*Oates* simply does not apply here" because the IRS employee who obtained the defendant's tax records "testified at trial." *Id.* The Court went on to hold that "Rule 803(8)[(A)(iii)] does not compel the exclusion of documents properly admitted under Rule 803(6) where the authoring officer or investigator testifies" because the testimony satisfies any underlying confrontation concerns. *Id.* Next, the Court declined to consider whether the documents in question should be excluded under 803(8)(A)(ii) because their author, an IRS agent, would be considered law enforcement personnel. *Id.* In the end, this Court concluded, "[h]ere the trial court properly admitted the evidence under Rule 803(6) and we affirm *on that basis*." *Id.* (emphasis added). This Court does not appear to have applied the rationale of *Oates* in in a single opinion, published or unpublished, since *Hayes*.

*Hayes* is also consistent with the Court's ruling in *United States v. Snyder*, which recognized that "it is well established that . . . entries in a police or investigating officer's report which result from the officer's own observations and knowledge may be admitted." 787 F.2d at 1434 (citing Rule 803, advisory committee report).

46

iii.    <u>The district court did not err in admitting the reports as business records.</u>

As established above, Mr. Johnson does not reiterate any of the challenges he raised below as to whether this evidence satisfied the provisions of Rule 803(6). His argument in this appeal exclusively concerns whether the public records exception bars admission of otherwise properly admitted business records in this case. Mr. Johnson has waived the issue of whether these records were properly admitted under Rule 803(6)—irrespective of any 803(8) concerns—from consideration in this appeal. *United States v. Walker*, 918 F.3d 1134, 1151 (10th Cir. 2019) ("Ordinarily, a party's failure to address an issue in its opening brief results in that issue being deemed waived.").

As was the case in *Hayes*, the question of admissibility here should end with a determination that this evidence was proper under Rule 803(6). Mr. Johnson does not challenge the admissibility of this evidence as a business record. As was the case in *Hayes*, it is sufficient that this evidence was properly admitted under Rule 803(6) and this Court should "affirm on that basis." *Id.*

Even if the Court were to apply Rule 803(8) in this context, it should affirm. Both 803(8)(A)(ii) and 803(8)(A)(iii) share a common goal,

they are meant to exclude nonroutine, adversarial records. Mueller &
Kirkpatrick, 4 Fed. Evid. § 8:90 ("[C]ourts have long recognized what
amounts to a judge-made exception to the use restriction in clause
(A)(ii) for routine and nonadversarial materials, even when prepared by
law enforcement people and offered against criminal defendants."); *see
also United States v. Dowdell*, 595 F.3d 50, 71–72 (1st Cir. 2010)
(collecting cases applying this exception and ruling a police booking
sheet was admissible as a business record). "Adversarial," in this
context, means something made during a criminal investigation or
"aimed at building a case." Mueller & Kirkpatrick, 4 Fed. Evid. § 8:90.

Neither the disciplinary log nor the incident reports meet this
definition. Both were routine, administrative records made as a matter
of course in running BOP operations. *See* ROA, Vol. III, at 46, 87. These
records are intended to facilitate BOP administration of the security
and orderly operation of the prison and are used to determine matters
such as custody level, program eligibility, and facility placement. ROA,
Vol. III, at 361. The incident reports, on their own, are purely factual
records, and any investigation of the reported incident is handled by a
separate staff member. *See id.* at 356. This investigative agent is also

48

the staff member responsible for referring any incidents for criminal prosecution. *See id.* at 374. The purpose of generating both the disciplinary log and the incident reports is not to advance a criminal investigation. And so, even if the correctional officers met the "law enforcement personnel" as contemplated in this rule, neither the log nor the reports would qualify for exclusion under 803(8). *Compare United States v. Edelmann*, 458 F.3d 791, 813–14 (8th Cir. 2006) (finding a memorandum from an inmate systems manager was not subject to exclusion under the rule because it was generated in the normal course of duties as part of a defendant's prison records) *with Cain*, 615 F.2d at 380–82 (finding an escape report which detailed what the escapee was wearing and where he might be hiding was subject to exclusion under this rule).

In addition, the limited purpose of the evidence in question weighs in favor of its inclusion. As the Second Circuit recognized, Congress' chief concern with this exclusion was "prosecutors attempting to prove their cases in chief simply by putting into evidence police officers' reports of their contemporaneous observations of crime." *United States v. Grady*, 544 F.2d 598, 604 (2d Cir. 1976). For this reason, the Second

Circuit allowed the admission of records that might otherwise have been excluded under this rule where the evidence was admitted "[f]or the limited purpose of showing that specified weapons were found in Northern Ireland[.]" *Id.* Here, evidence in question did not relate to the commission of *this crime*. All the documentary evidence predated this matter and was admitted for the limited purpose of establishing intent. This is not akin to Congress' concern that the prosecution would attempt to prove its case through reports rather than witnesses. It is more akin to the admission of a past record to establish ancillary facts.

Mr. Johnson makes much of the preliminary investigations on the back pages of the incident reports. Aplt's Br. at 4, 35–38. But the administrative disciplinary log, the investigator's observations, and the Unit Disciplinary Committee's preliminary recommendations are admissible under the same Rule 803(6) reasoning that this Court applied to the IRS tax examiner's tax filing data in *Hayes* and the ICE agent's deportation warrants and other A-file records in *Medrano*. *See Hayes*, 861 F.2d at 1228-31 (declining to apply Rule 803(8) to IRS records); *United States v. Medrano*, 356 F. App'x 102, 109 (10th Cir. 2009) (ICE records). At bottom, the analysis comes down to whether the

50

documents were prepared for prosecution or prepared for some other purpose. *See* Fed. R. Evid. 803, advisory committee notes, para. 6 (1972 Amendments) (noting that a railroad accident report was properly excluded as it "was prepared for use in litigating, not railroading"). Here, all these records were prepared for administrative purposes and not prosecution. *See* ROA, Vol. III, at 361 (discussing the reasons disciplinary records are kept). Much like the deportation records and tax filings in *Medrano* and *Hayes*, prison disciplinary records are routine, nonadversarial records that are properly treated under Rule 803(6). *See Snyder*, 787 F.2d at 1434 (citing Rule 803, advisory committee report for when police or investigating officer reports may be admitted under Rule 803(6)).

   iv.   <u>Any error in arising under Rule 803(8) was not plain or obvious.</u>

"Generally speaking, [this Court] do[es] not deem an error to be obvious and clear unless it is contrary to current well-settled law—that is, to the current law of the Supreme Court or the Tenth Circuit." *Lacy*, 904 F.3d at 893. Mr. Johnson has pointed to no case from this Circuit or the Supreme Court squarely addressing this issue. The only Tenth Circuit case to discuss this issue is *Hayes*, which, as discussed above,

was highly critical of the "overbroad" approach to Rule 803(8) that *Oates* adopted, and ultimately concluded that the reports were admissible under Rule 803(6). To be sure, *Hayes* noted a document is not subject to exclusion under *Oates* if the author of the document testifies. 861 F.2d at 1230. At most, then, *Hayes* held that testimony of the author is sufficient to admit a document subject to Rule 803(8)'s exception; it did not rule it was that testimony was necessary to avoid 803(8) exception in every case. *See id.*

Finally, this Court has also affirmed the admissibility of Immigration & Customs Enforcement A-File documents as business records despite their being prepared by ICE agents. *See Medrano*, 356 F. App'x at 109 (holding no abuse of discretion in admitting documents from A-File as business records in illegal reentry prosecution); *see also United States v. Hernandez*, 913 F.2d 1506, 1513 (10th Cir. 1990) (holding no abuse of discretion in admitting printouts of INS computer records in 18 U.S.C. § 922(g)(5) prosecution).

Any error here is not plain under the explicit language of Rule 803. Notably, the introductory clause of Rule 803 states that it is a rule of admissibility, not a rule of exclusion: "The following are not excluded

by the rule against hearsay, regardless of whether the declarant is available as a witness" Fed. R. Evid. 803. And it is widely understood that "the defining language of a hearsay exception sets only the extent and limits of the exception, and a statement that does not fit one exception may be admitted if it fits another." Mueller & Kirkpatrick, 4 Fed. Evid. § 8:90; *see also Oates*, 560 F.2d at 66 ("[A]s a general rule there is no question that hearsay evidence failing to meet the requirements of one exception may nonetheless satisfy the standards of another exception."). The actual text of Rule 803(8) does not indicate that it should be the exception to this rule. *See United States v. Smith*, 521 F.2d 957, 968 n.24 (D.C. Cir. 1975) (concluding 803(8) prohibited the admission of evidence under 803(6) but adding that the text of Rule 803(8) "appears to require a different conclusion"); *see also United States v. Pagan-Santini*, 451 F.3d 258, 264 (1st Cir. 2006) (referring to Rule 803(8) as "no model of lucid drafting"). Instead, this exception is judicially created and exists only in decisions interpreting the rule—not the text of rule itself. *See Hayes*, 861 F.2d at 1230 (noting that *Oates* required the exclusion of "law enforcement reports" to address congressional concerns and that this denied the reports "*benefit to*

53

*which they might otherwise be entitled*" (emphasis added)). A plain

reading of Rule 803 does not necessarily compel exclusion in this case.

Perhaps most importantly, circuit courts considering this issue

have not adopted a uniform interpretation of Rule 803(8). For example,

the Seventh Circuit allows a document that might otherwise be

excluded under Rule 803(8) to be admitted if the document's author

testifies. *See, e.g., United States v. King*, 613 F.2d 670, 672–73 (7th Cir.

1980); *United States v. Sawyer*, 607 F.2d 1190, 1193 (7th Cir. 1979), *cert*

*denied*, 445 U.S. 943 (1980). The First, Second, Fifth, Eighth, Ninth,

and Eleventh Circuits have all concluded that the rule does not prohibit

the admission of materials that are nonadversarial. *Dowdell*, 595 F.3d

at 71 (collecting cases). No circuit has weighed in on whether BOP

officials qualify as law enforcement personnel in this context. And no

circuit has adopted the broad proposition advance by Mr. Johnson

(Aplt's Br. 32–33, 37–38) that any evidence that would qualify for

admission under 803(8) is *per se* excluded by that same rule if the

prosecution seeks to admit it in a criminal case. In fact, most recent

decisions that have addressed this issue have either found the evidence

in question to be admissible or found no reversible error in the

admission of the evidence which would, arguably, fall under this rule.

*See, e.g., United States v. Torralba-Mendia*, 784 F.3d 652, 664–65 (9th Cir. 2015) (finding no error in the admission of redacted A-files); *Dowdell*, 595 F.3d at 70–72 (finding no abuse of discretion in admitting a booking sheet in seeming violation of 803(8)); *United States v. Hoffman-Vaile*, 568 F.3d 1335, 1341 (11th Cir. 2009) (finding no plain error in the admission as business records of reports prepared in processing and reviewing Medicare claims); *United States v. Harris*, 557 F.3d 938, 941 (8th Cir. 2009) (finding Rule 803(8) did not exclude testimony about the contents of a defendant's probation file). Even if it were plain that Rule 803(8) has some exclusionary effect on Rule 803(6), Mr. Johnson's maximalist view is not plainly recognized by this or any other circuit.

v. <u>The admission of this evidence did not affect Mr. Johnson's substantial rights.</u>

Under the third prong of plain error, Mr. Johnson is required to demonstrate that an alleged error affected his substantial rights. *United States v. Olano*, 507 U.S. 725, 734 (1993). "[I]n most cases it means that the error must have been prejudicial: It must have affected the outcome of the district court proceedings." *Id*. Additionally, in order

to affect a defendant's substantial rights, the error must have had a "substantial influence on the outcome or leave one in grave doubt as to whether it had such effect." *United States v. Irving*, 665 F.3d 1184, 1209 (10th Cir. 2011) (internal quotations omitted).

From an evidentiary standpoint, Mr. Johnson has sunk his own ship. He does not allege that the evidence in question was necessary to establish an element of this offense. In fact, he believes even without this evidence the element was "uncontestable." Aplt's Br. at 24. While the Government maintains that this evidence refuted Mr. Johnson's forecasted negligent-exposure argument, the government agrees that there was sufficient evidence of Mr. Johnson's intent without this evidence. Mr. Johnson does not allege that, had this evidence not been presented, he would have advanced an argument on intent. Instead, he seems to agree that any argument on intent would have been futile. Aplt's Br. 22–23

As Mr. Johnson points out, this case ultimately came down to a binary determination: "Either Mr. Johnson did these acts on purpose— or he didn't do them at all." Aplt's Br. 23. This tracks with Mr. Johnson's defense at trial which was, essentially, that the jury should

not believe Ms. Ray because it was not even possible for her to see what she claimed to have seen. ROA, Vol. III, at 129–30. As Mr. Johnson pointed out, if the jury did not believe Ms. Ray, then there was no need to consider this evidence at all. They had "to determine whether the government actually showed he exposed himself, then [they could] use that evidence to determine whether that was intentional." *Id.* at 399–400. But, as Mr. Johnson would now agree, if the jury determined that he had exposed himself in the manner alleged, then they would necessarily have determined the exposure was intentional. Said another way, if the jury believed Ms. Ray, there was no need to consult additional evidence of intent. Thus, any error in admitting this evidence did not affect Mr. Johnson's substantial rights.

Mr. Johnson claims this evidence made it more likely that the jury would convict him for being a "pervert" or out of sympathy for the prison guards who were subjected his perverted behavior. Aplt's Br. 40–41. These arguments resemble the Rule 403 balancing issues addressed above. Here, however, the concern is the *actual* effect of the evidence. Any potential this evidence had to unfairly bias Mr. Johnson was mitigated by the limiting instructions addressing the proper use of this

evidence. ROA, Vol. I, at 384; ROA, Vol. III, at 110. It was further tempered by Mr. Johnson's closing argument which reminded the jury they could not consider this evidence "for any other reason or purpose," and "[t]he fact that Mr. Johnson may have previously committed an act similar doesn't mean he did what they accused him of here." ROA, Vol. III, at 399. Given the efforts of the district court, and Mr. Johnson himself, to mitigate and limit the potential for this evidence to be misused, this Court should not harbor any doubts as to whether the jury allowed improper prejudice to affect the outcome here.

vi.    <u>This Court should, in its discretion, decline to consider this issue.</u>

Even if plain or obvious error occurred and even if it affected Mr. Johnson's substantial rights, under the fourth prong of plain error this Court may, in its discretion, decline to address the error. *See Olano*, 507 U.S. at 735–36. The Supreme Court has instructed appellate courts to utilize plain error "sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result." *United States v. Young*, 470 U.S. 1, 15 (1985) (internal quotation omitted). This limitation reflects a balancing of the "need to encourage all trial participants to seek a fair and accurate trial the first time around against [the]

insistence that obvious injustice be promptly redressed." *Id.*

This Court should decline to address this opportunistic claim. It calls for a novel ruling in this Circuit on an issue which this Court previously declined to address in *Hayes*. Mr. Johnson is seeking to expand Rule 803(8) jurisprudence without the benefit of a lower court ruling below. As detailed above, the resolution of this issue can be fact dependent, relying on the nature in which the reports in question are used and made. Had this issue been presented below, the adversarial or non-adversarial nature of these documents could have been litigated. But no party—including Mr. Johnson—was on notice that this was an issue until this appeal. In order to create an opportunity to raise this issue, Mr. Johnson has undercut his own requested jury instruction on negligent exposure and sought to challenge evidence which only addressed an element of the offense he characterizes as "uncontestable." *See* Aplt's Br. at 22–24. While a ruling from this Court on the extent of Rule 803(8)'s exceptions would bring clarity to this area, the issue would be best addressed in a case where it was litigated below. Declining to address this claim in this appeal would not result in a miscarriage of justice.

## IV. The district court did not err in sentencing Mr. Johnson.

Mr. Johnson alleges the district court committed procedural error by rejecting his unwarranted sentencing disparities argument "for mistaking the factor to consider under Section 3553(a)(6)." Aplt's Br. at 45 (internal quotation omitted).[3]

Below, Mr. Johnson asked the district court to impose a lower sentence because the maximum sentence for similar conduct in a majority of states is lower than the maximum possible sentence in Oklahoma. ROA, Vol. III, at 440–42. But he also acknowledged there were states outside of Oklahoma where a defendant could receive a maximum sentence of up three years for a first conviction of indecent exposure. *Id.* at 441.

During the explanation of its sentencing decision, the district court noted its "respect and appreciat[ion]" for Mr. Johnson's argument on this point. ROA, Vol. III, at 450. The court added, "But the factor to consider, is the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of

---

[3] Mr. Johnson does not allege his sentence is substantively unreasonable due to the presence of an unwarranted sentencing disparity.

similar conduct." *Id.*

Mr. Johnson alleges the district court committed legal error because it relied on factors like his criminal history and his past conduct in assessing whether there were unwarranted sentencing disparities in this case. He claims these factors were irrelevant to the sentencing disparity analysis because they "could not have given rise to a sentence over one year almost anywhere in the country." Aplt's Br. at 50–51. Mr. Johnson has pointed to no authority stating that these factors are irrelevant to a sentencing disparities analysis in an assimilated crimes case. In fact, the factor itself directs courts to consider "defendants with *similar records*." 18 U.S.C. § 3553(a). To determine whether a factor is irrelevant, the question should be whether *any court* could have relied on these factors under 18 U.S.C. § 3553(a)(6), not whether the factors become irrelevant past a certain sentencing threshold. To hold otherwise, would effectively create a federal cap for any sentence in an assimilated crimes case based on the national average maximum sentence.

This Court has long held, "While similar offenders engaged in similar conduct should be sentenced equivalently, disparate sentences

61

are allowed where the disparity is explicable by the facts on the record."
*United States v. Goddard*, 929 F.2d 546, 550 (10th Cir. 1991). First, the
maximum penalty in this case, as in any case, is a fact in the record:
ROA, Vol. II, at 56 (¶ 80). To the extent there is a disparity between
this case and sentences from other jurisdictions for similar conduct,
that disparity is explained by the fact that this sentencing court had the
authority to sentence higher than one year whereas other courts would
have been limited by a statutory cap. As the district court recognized,
this case—as with any case—turns on an individual assessment. ROA,
Vol. III, at 451. While Mr. Johnson claims the district court "reasoned
no basis" for its determination that any sentencing disparity was not
unwarranted, this conclusion ignores multiple pages in which the
district court set forth its individual assessment of Mr. Johnson, his
criminal history, his conduct, and all mitigating considerations, *id.* at
444–51.

In sum, the district court committed no legal error when it
considered more than just the national sentencing average for similar
conduct in evaluating the proper sentence under 18 U.S.C. § 3553(a)(6).

## Conclusion

For these reasons, this Court should affirm the judgment and sentence of the district court.

Respectfully submitted,

ROBERT J. TROESTER
United States Attorney


***s/ Tanner Herrmann***
TANNER HERRMANN
Special Assistant U.S. Attorney
Bar Number: 34681 (OK)
210 Park Avenue, Suite 400
Oklahoma City, Oklahoma 73102
(405)553-8700 - office
(405)553-8888 - fax
Tanner.Herrmann@usdoj.gov

### Certificate of Compliance with Type-Volume Limitation, <u>Typeface Requirements, and Type Style Requirements</u>

As required by Fed. R. App. P. 32(g), I certify that this brief is proportionally spaced and contains 12,937 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).  I relied on my word processor to obtain the count and it is:  Microsoft Word 365.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook.

I certify that the information on this form is true and correct to the best of my knowledge and belief formed after a reasonable inquiry.

<u>**_s/ Tanner Herrmann_**</u>
Special Assistant U.S. Attorney